FILED
MAY 26 2017
CLERK, U.S. ... COURT

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

ELLEN ROBERTA JOSEY,

    Plaintiff,

v.                                           Civil Action No. 2:16cv497

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Ellen Roberta Josey ("Josey") seeks judicial review of a decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Specifically, Josey claims that the Administrative Law Judge ("ALJ") failed to properly develop the medical record with respect to Josey's need for a cane and right carpal tunnel syndrome, and failed to consider her financial inability to seek treatment. This action was referred to the undersigned United States Magistrate Judge pursuant to provisions of 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure. Because the ALJ's decision was supported by substantial evidence, this Report recommends that the district court grant the Commissioner's Motion for Summary Judgment (ECF No. 16).

### I.    PROCEDURAL BACKGROUND

Josey applied for DIB and SSI in August 2012, alleging a disability onset date of April 2, 2010. (R. 52, 61). Her date last insured ("DLI") for disability benefits was December 31, 2012.

1

(R. 9). Her claims were denied initially and upon reconsideration. (R. 52, 61, 71, 82). Josey requested and received a hearing in front of an ALJ, which was held on March 12, 2015. (R. 22). The ALJ issued an unfavorable decision on March 25, 2015, finding that Josey did not qualify for DIB or SSI because she was not disabled under the relevant provisions of the Social Security Act. (R. 6-17). Josey appealed the decision, and the Appeals Council denied her request for review on June 9, 2016, making the ALJ's ruling the Commissioner's final decision. (R. 1-3); see 20 C.F.R. §§ 404.981, 416.1481. Having exhausted her administrative remedies, Josey filed this civil action seeking judicial review of the Commissioner's decision.

## II. FACTUAL BACKGROUND

Josey was born in 1955, has a high school diploma, and lives in Courtland, Virginia. She was 57 years old when she filed her claim for DIB and SSI, and 54 years old at the time of her alleged disability onset date. Josey has a varied work history, including jobs as a teacher's assistant, ride attendant, housekeeper, and caretaker. She was working as a caretaker until her patient died in March 2010, after which point she did not seek other employment. (R. 29). She testified that she did not look for work because she "started having back troubles, and [her] legs and stuff started hurting [her]." Id. Although she did not hold any jobs after March 2010, Josey did not apply for DIB and SSI until August 2012.

### A. Relevant Medical and Treatment History

In August 2009, Josey began receiving treatment at the Southampton Family Practice ("Southampton") for her diabetes. (R. 284). During a subsequent visit on November 24, 2009, Josey complained of chest pain. Id. Less than two weeks later she was hospitalized for a stent placement. (R. 285). During a follow up appointment with Southampton on December 18, 2009, the treating physician advised her to avoid lifting or strenuous activity for a couple of

2

weeks, and until she could follow up with a cardiologist. (R. 281). Josey continued receiving treatment for her diabetes from Southampton until April 2011, but no complaints of back or hand problems were documented. (R. 276-94).

In January 2012, Josey reported to Western Tidewater Free Clinic ("Western Tidewater") for treatment of her right shoulder. (R. 302-04). She was observed to have some pain when rotating and elevating her arms, but an x-ray of her shoulder was normal. (R. 302, 304, 317). Josey was prescribed Lidoderm patches. (R. 300). She was seen for a follow-up appointment in May 2012, and reported increased shoulder mobility after an injection. (R. 298). Josey was not examined for, and apparently had no complaints of further shoulder issues when she was seen at Western Tidewater in July, September, and October of 2012. (R. 296-97, 322). On November 27, 2012, Josey reported lower back pain, lower muscle spasms, and right arm swelling and pain. (R. 324). An examination revealed mild muscle spasms in the paralumbar areas, and mild pain with right shoulder abduction. (R. 324).

Josey was seen again on December 18, 2012, and was observed to have bilateral hip and right shoulder pain with a limited range of motion. (R. 323). An x-ray revealed symmetric degenerative changes of the bilateral hips. (R. 332). A lumber spine study was conducted at Sentara OBICI Hospital, and a report dated January 17, 2013, showed degenerative changes at L4-L5, and anterolisthesis at L3-L4 felt to be secondary to facet degenerative changes. (R. 331). Josey was seen at Western Tidewater in January, April, May, June, and July of 2013, but was not examined for any musculoskeletal complaints. (R. 320-21, 336-38).

In August and September 2013, Josey complained of hand cramping and swelling, and pain in her right hip and back. (R. 349-50). An EMG and nerve conduction study was performed on November 18, 2013, due to Josey's complaints of numbness in her right hand and

3

left foot. (R. 372). The study showed electrophysiological evidence of right carpal tunnel syndrome with no evidence of any neuropathy or myopathy in the lower left extremity. Id. Records of follow-up treatment are not entirely legible, but it appears that Josey later received injections into fingers on her left hand in June 2014. (R. 357). In her briefing, she alleges that all of the treatment concerned her right hand. see Pl.'s Br. Supp. Mot. Summ. J. 10 (ECF No. 15), but she testified that the shots were administered on the ring and middle fingers of her left hand. (R. 38) ("And then my left hand – if you show the records where they had to put shots in my two middle fingers on my left hand because they lock on me; every morning; they lock"). Treatment notes from visits in January, May, June, July, and September of 2014 did not reflect any musculoskeletal complaints. (R. 355-57, 362, 369). In October 2014, Josey was diagnosed with right knee arthritis, and the examining physician noted that she was walking with a cane. (R. 353). She testified during the hearing that a doctor told her verbally to get a cane in 2012, but did not prescribe one. (R. 31). However, in an earlier Disability Determination Services Pain Questionnaire, Josey reported that the cane was prescribed in February 2013. (R. 262). Other than Josey's statement which she attributes to her doctor, there is no evidence in the medical record that she was ever prescribed or otherwise told to use a cane.

### III. STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting

Consol. Edison Co. of New York v. NLRB, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. ANALYSIS

To qualify for disability insurance benefits under sections 416(i) and 423 of the Social Security Act, an individual must meet the insured status requirements of these sections, be under age sixty-five, file an application for disability insurance benefits, and be under a "disability" as defined in the Act. 42 U.S.C. §§ 416(i), 423. The Social Security Regulations define "disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A). To meet this definition, a claimant must have a "severe impairment" that makes it impossible to do previous work or any

other substantial gainful activity that exists in the national economy. 20 C.F.R. § 404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The five questions which the ALJ must answer are:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do the work activities?

3. Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (a "listed impairment" or Appendix 1")?

4. Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

5. Does the individual's impairment or impairments prevent him or her from doing any other work?

20 C.F.R. § 1520(a)(4).

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. See id. §§ 404.1520, 416.920. The burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)). When conducting this five-step analysis, the ALJ must consider: (1) the objective medical facts; (2) the diagnoses and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational

6

background, work history, and present age. Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967) (citing Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962)). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d at 1456.

### A. The ALJ's Decision

After reaching step four of the above analysis, the ALJ concluded that Josey was not disabled within the meaning of the Social Security Act because she was still capable of performing her past relevant work as a ride attendant. (R. 16).

At step one, the ALJ found that Josey had not engaged in substantial gainful activity since her alleged disability onset date, April 1, 2010. (R. 11). At step two, the ALJ found that Josey suffered from the following severe impairments: a back disorder, bilateral hip disorder, diabetes mellitus, hypertension, and a cardiac disorder (status post stent in 2009). Id. At step three, the ALJ found that Josey did not suffer from an impairment or combination of impairments that met the severity of one of the listed impairments in the Social Security regulations. (R. 12). At step four, the ALJ found that Josey had a Residual Functional Capacity ("RFC") to perform light work, "provided it requir[ed] no more than occasional postural activity and no climbing or exposure to heights or hazards." (R. 13). Given Josey's RFC, the ALJ concluded that she was capable of performing her past relevant work as a ride attendant, which meant she was not disabled under the Social Security Act. (R. 16).

In her brief, Josey primarily argues that the ALJ neglected his duty to develop the record and obtain additional medical evidence supporting her need for a cane and limitations associated with her right carpal tunnel syndrome diagnosis. She contends that a properly developed record would have supported additional restrictions in her RFC which would render her incapable of performing past work. Finally, she argues the ALJ failed to consider her financial limitations

when he relied on her lack of treatment to evaluate the severity of her medical conditions. This Report considers each argument in turn.

B.     **The Record Contained Sufficient Medical Evidence to Support the ALJ's Decision**

Josey primarily argues that the ALJ failed to properly analyze and develop the record, and that as a result, the RFC he formulated was not supported by substantial evidence. The Fourth Circuit has established that an ALJ "has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). "The key consideration is 'whether the record contained sufficient medical evidence for the ALJ to make an informed decision' regarding the claimant's impairment." Lehman v. Astrue, 931 F. Supp. 2d 682, 692-93 (D. Md. 2013) (citing Craft v. Apfel, No. 97-2551, 1998 WL 702296 (4th Cir. 1998); 20 C.F.R. § 416.912)) (internal parenthetical omitted). However, the ALJ is not required to "function as the claimant's substitute counsel." See Bell v. Chater, No. 95-1089, 1995 WL 347142 (4th Cir. June 9, 1995); see also Loving v. Astrue, No. 3:11cv411, 2012 WL 4329283 (E.D. Va. Sept. 20, 2012). Similarly, the "ALJ is under no obligation to supplement an adequate record to correct deficiencies in a plaintiff's case." Lehman, 931 F. Supp. 2d at 693 (citing Rice v. Chater, No. 94-2001, 1995 WL 253134 (4th Cir. May 1, 1995)).

Although an ALJ must make a reasonable effort to gather both objective and opinion evidence from treating physicians, see Smith v. Barnhart, 395 F. Supp. 2d 298, 301 (E.D.N.C. 2005), "[a] lack of opinion evidence from a treating physician does not . . . necessarily trigger a duty to develop the record." Lehman, 931 F. Supp. 2d at 694. This is particularly true where – as in this case – the claimant is represented by counsel. See Felton-Miller v. Astrue, No. 2:10-

cv-5, 2010 WL 4809030 (E.D.N.C. Oct. 4, 2010). "If the opinions of non-treating agency doctors are substantially supported by the objective medical evidence in the record or plaintiff's statements . . . the record will likely be sufficient to allow for a considered opinion on plaintiff's work related abilities." Lehman, 931 F. Supp. 2d at 694. In this case, there was substantial evidence in the record to support the conclusion that Josey was not disabled between her alleged onset date of April 1, 2010, and the date of the hearing, March 12, 2015.[1]

i. Use of a Cane

Josey first argues that the ALJ erred by failing to properly evaluate and develop the record as to her need for a cane, and by fashioning an RFC that excluded the limitation of using a hand-held assistive device. See Pl.'s Br. Supp. Mot. Summ. J. 5 (ECF No. 15). To support her contention that a cane was necessary, she points largely to her own testimony, and the medical evidence showing that she experienced problems with her back, hips, and right knee. Id. The ALJ did find, in relevant part, that Josey suffered from the severe impairments of back disorder and bilateral hip disorder. (R. 11). However, he also found that "the medical evidence of record documents no recent treatment and no findings of any significant functional limitations involving the claimant's right knee." (R. 12). He further stated that while Josey's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . the claimant's statements concerning the intensity, persistence and limiting effects of the[] symptoms [were] not entirely credible." (R. 14). As a result, the ALJ concluded that Josey had a RFC to perform light work. The RFC also accommodated her back and hip pain by permitting no more than occasional postural activity and no climbing or exposure to heights or hazards. (R. 13). This finding was supported by substantial evidence in the record, and the ALJ had no obligation to

---

[1] Because Josey applied for both SSI and DIB, the Commissioner evaluated her claims without regard to her DLI of December 31, 2012.

further develop the administrative record where there was no objective medical evidence to support further limitations or Josey's need for a cane.

To begin with, there is no medical evidence showing that Josey was ever prescribed a cane. She admitted this in her testimony to the ALJ. (R. 31). The only time a cane was mentioned in the medical record was a note from October 2, 2014, observing that Josey was walking with a cane. (R. 353). No similar observation was made during any of her more than a dozen visits to Western Tidewater between Fall 2012 – the earliest she alleges to have begun using the cane – and October 2014. (R. 320-24, 336-38, 336-38, 349-50, 355-57, 362, 369). Josey did claim during the hearing that a doctor verbally instructed her to use a cane, but no evidence beyond Josey's testimony was offered to support that allegation.[2] Id. By noting the lack of any prescription or suggestion for use of a cane, the mild objective findings during physical examinations, and the opinions of the state agency doctors, the ALJ properly determined that the record did not support the need for an assistive device. (R. 15-16).

Further development was not required because the record already "contained sufficient medical evidence for the ALJ to make an informed decision." Craft v. Apfel, No. 97-2551, 1998 WL 702296 *1, *3 (4th Cir. 1998). In other words, the absence of a physician's suggestion or prescription for a cane despite over a dozen visits to Western Tidewater, in combination with the conservative treatment Josey received and the opinions of the state agency doctors, constituted sufficient medical evidence to make an informed decision that Josey did not require a cane. Moreover, Josey was represented by counsel at the ALJ hearing, and she made no objections to the accuracy or completeness of the record with respect to her use of a cane. (R. 24-46). In fact, during the hearing the ALJ specifically asked counsel if they could point to a particular part of

---

[2] The record also contains inconsistencies of when Josey alleges she began using a cane. Compare (R. 262) (alleging use beginning in February 2013), with (R. 31) (alleging use beginning in Fall 2012).

the record where a cane was prescribed or recommended – counsel could not. (R. 49-50). The evidence available to the ALJ was more than sufficient to conclude that a cane was not needed, and where the record is adequate to make an informed decision, the ALJ was not required to act as Josey's substitute counsel or supplement any deficiency in her claims. See Bell v. Chater, No. 95-1089, 1995 WL 347142 (4th Cir. June 9, 1995); see also Loving v. Astrue, No. 3:11cv411, 2012 WL 4329283 (E.D. Va. Sept. 20, 2012).

Additionally, Josey's argument ignores the extensive medical evidence regarding her back and hip disorders, all of which was analyzed by the ALJ. The one recorded instance of her using a cane simply indicated that she had obtained one – not that it was prescribed or medically necessary. Thus, the record supports the ALJ's conclusion that no medical doctor believed Josey needed a cane. Similarly, Josey's argument that the ALJ's [partial] reliance on the state agency doctors' opinions was erroneous because it was given a year before Josey was observed walking with a cane is unpersuasive. Those opinions were supported by and properly focused on the medical evidence relevant to the period of disability under evaluation. Had the ALJ determined that Josey needed a cane to assist with ambulation, he would have been substituting his lay experience for that of her treating physicians who, after numerous consultations and with full awareness of Josey's impairments, did not prescribe an assistive device. Finally, Josey's argument that the Vocational Expert should have been asked what effect the use of a cane would have on her ability to return to past relevant work is unpersuasive because the ALJ did not include this limitation in his RFC. Because the ALJ's decision was supported by substantial evidence in the record, he was not required to further develop the administrative record, and the exclusion of an assistive device in the RFC was supported by substantial evidence.

ii.  Right Carpal Tunnel Syndrome

Josey next argues that the ALJ erred in concluding that her carpal tunnel syndrome was "non-severe" because he failed to properly analyze and develop the record, and that the RFC therefore erroneously excluded non-exertional limitations related to her carpal tunnel syndrome that would affect her vocational profile. See Pl.'s Br. Supp. Mot. Summ. J. 10-11 (ECF No. 15). At step two of the five-step disability analysis, the ALJ found that Josey's right carpal tunnel syndrome was non-severe because after an EMG and nerve conduction study on November 18, 2013, "there [was] no record of any follow-up treatment or any findings of limited range of motion or decreased strength in the claimant's right hand." (R. 12). But Josey argues that there was evidence in the record showing she received treatment related to her right carpal tunnel syndrome. See Pl.'s Br. Supp. Mot. Summ. J. 10 (ECF No. 15). Specifically, she points to visits to Western Tidewater in May, June, and July of 2014 where she either complained of or was treated for hand stiffness, purportedly receiving injections on June 12 and 16. Id.

However, a review of the record suggests that Josey's recitation of the treatment history in her brief is not entirely accurate. While it is apparent that she visited Western Tidewater on May 1, June 12, and July 3, there is no record that corroborates a June 16 visit or that an injection was administered that day. (R. 356, 357, 362). The record from her June 12 visit – while not entirely legible – appears to indicate that she received two injections, one being in the ring finger on her left hand. (R. 357). The injections being made to the fingers on the left hand is corroborated by Josey's own unequivocal testimony in front of the ALJ: "And then my left hand – if you show the records where they had to put shots in my two middle fingers on my left hand because they lock on me. . . ." (R. 38) (emphasis added); see also (R. 45) (discussing problems with her left hand under examination by counsel, and acknowledging that doctor told

her to come back for more shots, but that she does not like needles). Further, the brief treatment note from July 3, 2014, does not appear to discuss radial tunnel syndrome as Josey alleges in her brief. (R. 356). Thus, the ALJ did not err in finding that the objective medical evidence did not show "follow-up <u>treatment</u> or any <u>findings</u> of limited range of motion or decreased strength in the claimant's right hand." (R. 12) (emphasis added). Josey's arguments to the contrary simply misstate the record. As a result, her right carpal tunnel syndrome did not require any significant medical treatment[3] or result in any medically determined non-exertional functional limitations, and the ALJ did not err in concluding that Josey's right carpal tunnel syndrome was non-severe. See Gross v. Heckler, 785 F.2d 1163 (4th Cir. 1986); see also 20 C.F.R. §§ 404.1509, 416.909. Because the ALJ properly concluded that the objective medical evidence did not show Josey's right carpal tunnel syndrome to be severe, he did not err in excluding it as a non-exertional limitation in the RFC or vocational profile.

### C. The ALJ was not required to Consider Undisclosed Reasons for Lack of Treatment

Josey's final argument is that the ALJ failed to consider that her financial status was a reason for the lack of treatment she received, and that as a result, he erred by relying on her lack of treatment in finding that Josey was not disabled. This argument mischaracterizes the ALJ's opinion, and is otherwise unpersuasive because Josey – who was represented by counsel – did not identify financial issues as an obstacle to obtaining medical treatment.

The ALJ does cite Josey's "conservative treatment history" as a reason for giving the state agency consultants' opinion evidence significant weight. (R. 16) (assigning significant

---

[3] Although Josey testified that her doctor discussed surgery with her – which testimony was given in the context of a discussion about her left hand – there is no record of that conversation in her medical records, nor any referral for such treatment. (R. 38). In addition, there is no medical evidence of further treatment on the left hand, or of any limitations associated with her left hand complaints after the injections on June 12, 2014. Gross, 785 F.2d at 1166 (citing Purdham v. Celebrezze, 349 F.2d 828, 830 (4th Cir. 1965); 20 C.F.R. § 404.1530) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling.").

13

weight because the opinions are consistent with the objective medical evidence and conservative level of treatment). However, the opinion's reference to "conservative level of treatment" does not speak to the frequency, but rather the substance of Josey's medical treatment. In fact, Josey received frequent medical care – visiting doctors nearly two-dozen times between 2009 and 2014. But as the ALJ's opinion and objective medical evidence highlights, the frequent treatment Josey received did not result in recommendations for significant medical treatment. (R. 11-16; 276-94, 296-97, 320-22, 336-38, 355-57, 362, 369). Thus, the ALJ was not faulting Josey for failing to seek treatment, but merely opining that she did not need a level of treatment consistent with a disabling condition.

Moreover, prior to filing her brief in this action, Josey has never asserted that she was unable to obtain medical treatment due to a financial inability to do so. Where a claimant cannot afford medical treatment, they must "show that [they] ha[ve] exhausted all free or subsidized sources of treatment and document [their] financial circumstances before inability to pay with be considered good cause [for failing to seek treatment]." Gordon v. Schweiker, 725 F.2d 231, 237 (4th Cir. 1984) (citing Social Security Ruling 82-59).[4] Josey's counsel did not argue, nor did Josey testify that her financial status prevented treatment that was recommended by her doctors. And indeed, the objective medical evidence suggests it did not. As discussed above, the "ALJ is under no obligation to supplement an adequate record to correct deficiencies in a plaintiff's case." Lehman, 931 F. Supp. 2d at 693 (citing Rice v. Chater, No. 94-2001, 1995 WL 253134 (4th Cir. May 1, 1995)). The record presented to the ALJ, certified as complete by Josey's counsel, was adequate to dismiss any inference that financial hardship was a factor in Josey's

---

[4] The Fourth Circuit's decision in Gordon does say that before a claimant can be denied disability benefits due to failure to obtain treatment, they must be given a reasonable opportunity to do so or provide justification for failing to do so. See 725 F.2d at 237. However, as discussed above, Josey was not denied disability benefits because she failed to obtain treatment.

14

obtaining medical treatment. Stated differently, if Josey was unable to obtain treatment because of her inability to pay, that was not apparent from the medical record or revealed to the ALJ by Josey or her counsel. It was not the ALJ's obligation to make an argument and develop evidence to support it where nothing suggested financial inability to obtain medical treatment to be a factor in Josey's case.

## V. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the court DENY Josey's Motion for Summary Judgment (ECF No. 14), GRANT the Commissioner's Motion for Summary Judgment (ECF No. 16), and AFFIRM the final decision of the Commissioner.

## VI. REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court

15

based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge
DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
May 26, 2017